United States District Court
For the Northern District of California

**E-FILED on** 01/03/11

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ALBERT C. THOMPSON,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

Defendant.

No. C-08-4150 RMW

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
**[Re Docket Nos. 8, 9]**

Plaintiff Albert C. Thompson ("claimant") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision by the defendant Commissioner of Social Security (the "Commissioner") denying Thompson's claims for disability insurance benefits under the Social Security Act ("Act"). Presently before the court are the parties' cross-motions for summary judgment. Having considered the papers submitted by the parties and the entire administrative record, for the reasons set forth below, the court denies the claimant's motion and grants the Commissioner's cross-motion for summary judgment.

United States District Court
For the Northern District of California

## I. BACKGROUND

### A. Claimant's Age, Education, and Vocational History

Claimant was born on May 22, 1955. Tr. 496. He completed high school and an electrical apprenticeship training, going on to work twenty six years as an electrician. Tr. 496.

### B. Initial Claim

On February 24, 2004, claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning on July 25, 2003. Tr. 54. Claimant had stopped working because of symptoms related to sarcoidosis, previously diagnosed by a lung biopsy. Tr. 335. These symptoms included shortness of breath, pain, and fatigue. Tr. 59, 496. Claimant also alleged disability due to diabetes, an ankle injury, depression, the side effects of Prednisone use, lower spine problems, and a bulging disk. Tr. 57. The claim was initially denied on February 24, 2005 and again denied upon reconsideration on September 19, 2005. Tr. 54. Claimant subsequently filed a request for hearing, which was held on June 26, 2006. Tr. 54. In a decision issued January 19, 2007, the Administrative Law Judge ("ALJ") held that claimant had not been under a disability within the meaning of the Social Security Act from July 25, 2003 through the date of the decision. *See* Tr. 51-64.

Claimant timely appealed to the Appeals Council. *See* Tr. 46-48. The Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. Tr. 48. Specifically, the Appeals Council directed the ALJ to reconsider the opinion of Dr. Orod Khaghani, M.D., wherein Dr. Khaghani wrote that claimant was capable of only sedentary work. Tr. 31. The Appeals Council further directed the ALJ to explain the weight given to such opinion evidence, and obtain supplemental evidence from a vocational expert to clarify the effect of the claimant's assessed limitations on the claimant's occupational base. Tr. 48.

### C. Reconsideration on Remand

Per the remand order from the Appeals Council, the ALJ reconsidered the reports of claimant's treating physician, Dr. Khaghani, and obtained new evidence from a vocational expert.

Claimant appeared and testified at a hearing held on August 30, 2007. During the hearing, the ALJ and claimant discussed claimant's March 1, 2007 visit to Dr. Barbara Stumpf, M.D., a pulmonary specialist, which was after the close of the disability period. Tr. 541. The ALJ asked claimant to submit the records after the hearing for his evaluation prior to rendering a decision. Tr. 541.

Claimant duly submitted medical records from Dr. Stumpf's Oakland Kaiser office, Exhibit 18F, and additional medical records from Dr. Khaghani's Santa Clara Kaiser office, Exhibit 19F. *See* Tr. 437-481. These medical records encompass not only Dr. Stumpf's visit, but also visits with Dr. Khaghani, Dr. Alloo, Dr. Dailey, Dr. Baker, and Dr. Wang, and an array of medical and laboratory tests that were performed on claimant between January 3, 2006 and July 16, 2007.

Also at the hearing, the vocational expert testified that claimant's past relevant work as an electrician was medium work and that claimant's past work exceeds claimant's residual functional capacity. Tr. 31. The vocational expert further testified that claimant could perform construction related counter clerk jobs, which were available locally, and which would be available to claimant after claimant reached age 50. Tr. 32.

In a decision issued January 7, 2008, the ALJ found that claimant had the following severe impairments: pulmonary sarcoidosis, dyspnea, and lumbar degenerative disc disease. Tr. 27. As to claimant's depression, the ALJ discussed the opinion of Dr. Anna Teran, M.D., and found that the depression was nonsevere because it caused no more than "mild" limitation in the functional areas of daily living, social functioning, and concentration, persistence or pace. Tr. 27-28. The ALJ also noted that claimant had no episodes of decompensation. Tr. 28. Finally, the ALJ extensively discussed Dr. Khaghani's medical opinion, as well as the objective medical evidence of claimant's conditions shown by the medical records. *See* Tr. 29-31.

At the fourth step of the disability determination, the ALJ determined that the claimant was capable of "the full range of light work." Tr. 30-31. Based on the vocational expert's testimony, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that the claimant could perform. Tr. 32. Accordingly, the ALJ found claimant to be "not disabled" at the fifth step of the disability determination process. Tr. 32. In making this determination, the ALJ did

not discuss obesity or multiple myeloma. *See* Tr. 22-33. The ALJ also did not directly discuss Dr. Stumpf's opinion. That said, the ALJ did cite to the results of three pulmonary function tests performed by Dr. Thomas M. Dailey, M.D., each of which had been reviewed by Dr. Stumpf.

Claimant again appealed to the Appeals Council. Tr. 5-7. The Appeals Council denied claimant's request for review. Tr. 5. Subsequently, claimant timely filed a civil action with this court.

## II. LEGAL STANDARD

### A. Standard for Review of Denial of Disability Insurance Benefits

The court has jurisdiction to review the Commissioner's decision denying benefits pursuant to 42 U.S.C. § 405(g). However, the district court's scope of review is limited. The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. 42 U.S.C. 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In this context, evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997). To determine whether substantial evidence exists to support the ALJ's decision, the court examines the administrative record as a whole, and considers evidence both supporting and detracting from the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Sandgathe*, 108 F.3d at 980.

### B. Standard for Determining Disability Benefits

To qualify for disability benefits under the Social Security Act, the claimant must be "disabled" within the meaning of the Act. Under the Act, disability means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to last for a continuos period of not less than twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). The claimant has the burden of proving that he is unable to perform past relevant work. *Id*. Where the claimant meets

this burden, a prima facie case of disability is established. *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work that exists in the national economy. *Id.*

Social Security Disability cases are evaluated using a five-step, sequential evaluation process. 20 C.F.R. § 404.1520. In the first step, the ALJ must determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

In step two, the ALJ must determine whether the claimant has an impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(c). If the claimant's impairment is not severe, the claimant is not disabled and is not entitled to disability benefits, but if the impairment or combination of impairments is severe, the evaluation proceeds to step three.

In step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If the claimant's condition meets or exceeds the requirements of a listed impairment, the claimant is disabled. If not, the analysis proceeds to step four.

At step four, the ALJ must first determine the claimant's residual functional capacity in view of the claimant's impairments and the relevant medical and other evidence in the record, and then determine whether the claimant is able to do any work that he previously performed in the past. If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(e) and (f).

At step five, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled. Taking into account a claimant's age, education, vocational background, and residual functional capacity, the Commissioner must show that the claimant can perform some work that exists in significant numbers in the national economy. This can be shown either by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines ("grids"). *Tackett*, 180 F.3d at 1101; 20 C.F.R. § 404.1520(g)(1).

United States District Court
For the Northern District of California

## III. ANALYSIS

Claimant alleges that the ALJ erred at the fourth step of the disability determination. Specifically, claimant argues that the ALJ: (1) committed reversible error in determining that claimant was capable of light work by failing to give controlling weight to the opinion of claimant's treating physician; (2) committed reversible error by failing to discuss the Dr. Stumpf's report; (3) committed reversible error by failing to evaluate the effects of obesity in determining whether claimant is disabled; (4) violated his duty to develop the record; and (5) failed to consider new evidence of claimant's multiple myeloma. Each will be addressed in turn.

### A. Consideration of Treating Physician Dr. Khaghani's Opinion

Claimant asserts that the ALJ erred in failing to give Dr. Khaghani's opinion controlling weight. Thompson's Motion at 8. Claimant also asserts that the ALJ failed to give clear and convincing reasons for discrediting Dr. Khaghani's opinion. *Id.* In his opinion, Dr. Khaghani stated that claimant is limited to sedentary functional capacity with the ability to sit at least six hours and stand and walk less than two hours in an eight hour day. Tr. 14. In response, the Commissioner contends that the ALJ properly rejected Dr. Khaghani's opinion because it was contradicted by the opinions of non-treating physicians which were supported by independent clinical findings. Moreover, the Commissioner notes that Dr. Khaghani did not support his medical opinion with citations to objective tests or examination findings. Opp. at 4-5.

As a general rule, more weight is to be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If the treating physician's opinion is not contradicted, it may be rejected only for "clear and convincing" reasons. *Id.* Where the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Id.* Specific and legitimate reasons include that the treating physicians' opinions are conclusory, brief, unsupported by the record as a whole, or unsupported by objective medical findings. *Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1195 (9th Cir. 2004).

**United States District Court**
For the Northern District of California

Here, the ALJ was justified in rejecting Dr. Khagani's opinion contained within the January 21, 2006 residual functional capacity questionnaire, which stated that the claimant could perform only sedentary work since January 17, 2003. The ALJ noted "Dr. Khaghani diagnosed sarcoidosis [and] diabetes type II . . . . No objective tests or examination signs/findings were cited to support the residual functional capacity assessment although an earlier assessment cites abnormal x-rays and abnormal pulmonary function tests (Exhibits a11F, 15F)." TR 31. The ALJ's description of the questionnaire is accurate – no tests, examination signs, or findings are cited to support the opinion. Under *Batson*, this is a specific and legitimate reason for disregarding the treating physician's opinion.

The ALJ also discussed specific medical evidence in the record that contradicted Dr. Khagani's opinion. For example, the ALJ reviewed subsequent medical records, including chest x-ray summaries and pulmonary function tests, that demonstrated improvement in the claimant's medical condition. The ALJ specifically noted the July 2006 treatment record of Dr. Dailey, who reported a pulmonary function test for Diffusing Capacity for Carbon Monoxide [DLCO] that was the "best . . ever!" and that claimant's Total Lung Capcity [TLC] and Forced Vital Capacity [FVC] were the "second best values in 2 years!" Tr. 31, 395-396. .

Moreover, the ALJ discussed an evaluation by a consultative examiner, a chiropractor, and opinions by treating physician Jeffery Anderson, M.D. The ALJ notes that Dr. Anderson treated claimant between January, 2003 and March 23, 2005. Tr. 30. As a treating physician, Dr. Anderson opined that claimant could return to full duty at his usual occupation with no limitations or restrictions on March 23, 2005. Tr. 227. Yet in exhibits 11F, 15F and 17F, Dr. Khaghani opined that claimant could sit at least 6 hours per day and stand/walk for less than 2 hours per day, making him capable of only sedentary work. Tr. 376; Tr. 428; Tr. 435. *See* Soc. Sec. Rul. 83-10 (Cum. Ed. 1983) (sedentary work requires claimant to be able to sit six hours out of an eight hour work day and stand or walk no more than 2 hours out of an eight hour work day); *and see* 20 C.F.R. § 404.1567(a). The ALJ rejected exhibits 15F and 17F because they were dated December 2002, prior to claimant's period of eligibility, leaving only exhibit 11F to support Dr. Kaghani's opinion.

Although not expressly stated, the ALJ held that Dr. Anderson's opinion contradicted Dr. Khaghani's opinion in exhibit 11F. As Dr. Anderson and Dr. Khaghani were both treating physicians, whose opinions are of equal weight, the ALJ gave specific and legitimate reasons for rejecting Dr. Khaghani's opinion. *See* Tr. 30-31. Specifically, the ALJ held that Dr. Khaghani's opinion was not supported by objective tests or examination signs/findings. Tr. 31. The ALJ cited specific examples of objective test results from the record that indicated that claimant's condition was better than Dr. Khaghani had reported. Tr. 31. For example, the ALJ cited results from a July 3, 2006 chest x-ray, a July 12, 2006 treadmill test, an August 8, 2006 echocardiogram, and pulmonary function test results from July 11, 2006, July 27, 2006, November 7, 2006, and February 14, 2007, that all indicated claimant is capable of light work. Tr. 31.

In sum, the ALJ did not commit error in discussing the weight he gave Dr. Khaghani's opinion. What's more, the ALJ's stated reasons for rejecting Dr. Khaghani's opinion are specific and legitimate and supported by substantial evidence in the record.

**B. Consideration of Dr. Stumpf's Report**

Claimant asserts that the ALJ did not discuss Dr. Stumpf's report in his decision and that failure to provide specific and legitimate reasons for rejecting the opinion of an examining doctor is reversible error. Thompson's Motion at 6. Claimant further asserts that the ALJ must indicate the amount of weight given to key items of evidence, and that Dr. Stumpf's report should be given more weight because Dr. Stumpf is a pulmonary specialist. Thompson's Motion at 7. The Commissioner contends that Dr. Stumpf's report is consistent with the ALJ's conclusion that, while claimant could no longer perform his past relevant work as an electrician, he could still perform "light" work existing in significant numbers in the national economy. Opp, at 3.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th. Cir. 1995). Additionally, the ALJ must provide an explanation when he rejects significant or probative evidence, but is not required to discuss every piece of medical evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

United States District Court
For the Northern District of California

Dr. Stumpf's evaluation of claimant's condition consisted of a discussion with claimant and a review of the results of three pulmonary function tests performed by Dr. Dailey. Tr. 465; Tr. 441. During the visit, Dr. Stumpf "advised [claimant] to seek retraining for a less demanding job." Tr. 441. While the ALJ did not specifically discuss Dr. Stumpf's report, he did consider and discuss the results of the three objective tests performed by Dr. Dailey that Dr. Stumpf reviewed. Tr. 31. The ALJ's determination that claimant was unable to perform his past relevant work (medium work), but that he was capable of the full range of light work, is consistent with Dr. Stumpf's opinion that claimant should seek retraining for a less demanding job. Tr. 31. Therefore, the ALJ was not required to discuss Dr. Stumpf's report and did not commit reversible error in failing to specifically do so.

**C. Consideration of Obesity**

Claimant asserts that the ALJ committed error in failing to identify obesity as a "severe" impairment and further failing to evaluate the effects of obesity on claimant's respiratory and lower back impairment. Thompson's Motion at 7-8. Claimant asserts that this matter should accordingly be remanded for further proceedings. The Commissioner contends that claimant has not established disabling obesity because the record does not clearly indicate that obesity exacerbated the claimant's other impairments or resulted in functional limitations not considered by the ALJ. Opp. at 4.

An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listed impairments in an equivalency determination unless the claimant presents evidence in an effort to establish equivalence. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Assumptions will not be made about the severity or functional effects of obesity combined with other impairments. Soc. Sec. Rul. 02-01p (Cum. Ed. 2002). Moreover, an evaluation will be based on the information in the case record. *Id.*

The summary clinical record dated September 14, 2007 indicates that obesity was both noted and last addressed on July 20, 2006. Tr. 460. The record further indicates that claimant's weight fluctuated during the period of claimed disability. Tr. 291 (indicating that claimant's weight was 177 lbs. on August 8, 2003); Tr. 257 (indicating that claimant's weight was 215 lbs on November 10, 2004); Tr. 396 (indicating that claimant's weight was 210 lbs. on July 27, 2006). Dr. Clark Gable,

United States District Court
For the Northern District of California

M.D., reported on April 1, 2004 that claimant was moderately overweight, but moderately muscular and also noted claimant was 205 lbs at this time. Tr. 202. Although there is brief mention of obesity in the medical records, there is no mention that the claimant's obesity exacerbated any of his other impairments or that it was severe enough to rise to the level of a listed impairment on its own. There is also no evidence in the record stating that claimant's obesity limits his functional capacity. On appeal, the claimant has not pointed to any evidence of functional limitations due to obesity, evidence that obesity exacerbated any other severe condition, or evidence that obesity was a listed impairment on its own.

The ALJ did not commit reversible error because there is no evidence in the record stating that claimant's obesity limits his functioning or rises to the a listed impairment on its own. Therefore, the ALJ was not required to evaluate the effects of obesity.

**D. Duty to Develop the Record Further**

Claimant asserts that the ALJ had a heightened responsibility to fully develop the record of an unrepresented claimant and failed to do so when he failed to explore all probative medical evidence, such as Dr. Stumpf's anemia diagnosis, Dr. Teran's psychiatric evaluation of claimant, and claimant's obesity. Thompson's Motion at 10-11. The Commissioner contends that claimant's arguments have no merit and correctly points out that Dr. Teran's report was discussed in the ALJ's decision. Opp. at 6. *See* Tr. 28-29.

The ALJ's duty to develop the record in Social Security Disability cases is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). The record before the ALJ was neither ambiguous nor inadequate. The ALJ cited numerous physician's reports and substantial objective medical data that supported the decision that claimant was capable of a full range of light work. Therefore, the ALJ had no further duty to develop the record.

**E. Consideration of Dr. Khaghani's Letter and New Evidence of Multiple Myeloma**

Claimant seeks remand so that the ALJ may evaluate a revised opinion by Dr. Khaghani and new evidence of claimant's multiple myeloma. Thompson's Motion at 11-12. The Commissioner contends that the new evidence does not bear directly and substantially on the matter and that the

United States District Court
For the Northern District of California

new evidence would not have changed the outcome of the ALJ's determination had it been before him. Opp. at 7.

In order to merit a remand, the claimant must show that the new evidence is material, *i.e.*, relevant, probative, and likely to change the outcome of the case, and the claimant must also demonstrate good cause for not having incorporated the new evidence into the administrative record. *See* 42 U.S.C. § 405(g). To be material under section 405(g), the new evidence must bear directly and substantially on the matter in dispute. *Mayes*, 276 F.3d at 462. A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his claim has been denied. *Id.* at 463. To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier. *Id.*

Attached to his motion, claimant has submitted a letter by Dr. Khagani dated July 29, 2008 and medical records between August 8, 2008 and January 6, 2009 that document worsening back pain, a bone marrow biopsy, and chemotherapy treatment for multiple myeloma. Thompson's Motion at 13-28. But Dr. Khaghani's letter merely clarifies what is already in the record as Dr. Khaghani's medical opinion, that claimant is sedentary. *Compare* Thompson's Motion at 13 (stating "[i]t is my medical opinion that Sarcoidosis precludes him from working in his trade and as a result, he is classified as sedentary"), *with* Exhibit 11F (stating that claimant could sit at least 6 hours per day and stand/walk for less than 2 hours per day, making him capable of only sedentary work). Indeed, Dr. Khaghani's letter provides no new information that would be relevant or probative to claimant's condition during the disability period. As the ALJ correctly stated in his decision, forms completed by Dr. Khaghani authorizing a period of "off work" or light duty work for the claimant are not equivalent to a determination of disability or a statement that the claimant is not able to perform any work as determined under the Social Security Regulations. Tr. 30. Therefore, Dr. Khaghani's letter is not material to claimant's condition during the period of disability.

Evidence of claimant's multiple myeloma shows that the claimant was diagnosed no earlier than August 2008, when a bone marrow biopsy was conducted. *See* Thompson's Motion at 17. Claimant's eligibility period, however, ended December 31, 2006, nearly two years before doctors tested the claimant for multiple myeloma or made the diagnosis. Claimant has not demonstrated that

United States District Court
For the Northern District of California

the new evidence is probative of claimant's condition during the disability period or that there is a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing. Therefore, the new evidence of multiple myeloma are material to claimant's condition during the period of disability.

What's more, claimant has submitted no evidence showing that Dr. Khaghani's letter or the new evidence of multiple myeloma were not available earlier and has therefore not demonstrated good cause. Thus, having made no showing that the letter or medical records are material nor a showing of good cause, claimant is not entitled to remand for consideration of this evidence.

**IV. ORDER**

For the foregoing reasons, it is appropriate to affirm the decision of the Commissioner. Accordingly, the court denies claimant's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

DATED: 01/03/11

Ronald M. Whyte

RONALD M. WHYTE
United States District Judge